**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

American Fence Company Incorporated, et al.,

Plaintiffs,

v.

American Fence Company LLC,

Defendant.

No. CV-24-01759-PHX-GMS

**ORDER**

Pending before the Court are Plaintiffs' Motion for Leave to File First Amended Complaint and to Amend Scheduling Order (Doc. 38) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 41).[1] For the reasons discussed below, Plaintiffs' Motion for Leave to File First Amended Complaint and to Amend Scheduling Order (Doc. 38) is granted, and Plaintiffs' Motion for Partial Summary Judgment (Doc. 41) is granted in part and denied in part.

**BACKGROUND**

Plaintiffs American Fence Company, Inc., American Fence Company of Arizona, Inc., American Fence Company of New Mexico, Inc., and American Fence and Security Company, Inc. ("Plaintiffs") are a group of related companies that collectively do business through renting and selling fencing and fencing-related goods and services. (Doc. 1 at 3–

[1] Request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

4). Plaintiffs have conducted business under the marks "American Fence Company" and "American Fence" throughout Arizona (since 1954), California (since 1956), Colorado (since 1989), Florida (since 2000), Kansas (since 1958), Nevada (since 1988), New Mexico (since 1955), Texas (since 1954), and Utah (since 1955). (Doc. 46-1 at 3–9). Plaintiffs have been using the mark, "AMERICAN RENT-A-FENCE," to advertise and identify their business since 1983. (*Id.* at 2). In 2012, Plaintiffs registered the mark, "AMERICAN RENT-A-FENCE" for temporary fence rental services in the U.S. Trademark Office under Registration No. 4,235,780. (*Id.*). The registration is still of record with the U.S. Trademark Office and was renewed in 2022. (*Id.* at 2–3).

Defendant American Fence Company, LLC ("Defendant") is a Nebraska limited liability company with its operations also managed in Nebraska. (Doc. 16 at 2). Plaintiffs seek to amend the complaint to add American Fence Store Incorporated ("AFS") as a defendant. (Doc. 38). Defendant sells and rents fencing and fencing-related goods and services. (Doc. 41-5 at 6). Plaintiffs and Defendant are self-proclaimed competitors in the fencing business. (*Id.*). In their briefing, Defendant has not challenged Plaintiffs' claim that AFS is a related business entity to Defendant. (*See* Doc. 39).

Defendant admits that, before June 2023, they did not sell, rent, or lease temporary fencing products within any states in which Plaintiffs operated. (Doc. 46-1 at 3). Defendant also admits that there is no information showing that Plaintiffs were aware that Defendant used "American Fence" or "American Rental Fence" in any of the states where Plaintiffs operated before June 4, 2024. (Doc. 46-1 at 17).

## I. Procedural History

Plaintiffs filed their initial Complaint on July 17, 2024, seeking damages due to Defendant's alleged infringement upon Plaintiffs' trademarks. (Doc. 1). Defendant then filed its Answer on August 26, 2024. (Doc. 16). In its Answer, Defendant admitted that it published web pages under the URL Address, https://fencerentalcompany.com, for American Fence Rental and that these web pages "promote Defendant's temporary fencing," in many cities, including San Diego, California; Santa Fe, New Mexico; Orlando,

Florida; Salt Lake City, Utah; Houston, Texas; Wichita, Kansas, and; Boulder, Colorado. (*See* Doc. 1 at ¶¶35–36; Doc. 16 at ¶¶35–36). These are states in which Plaintiffs also do business. (Doc. 46-1 at 3–9).

On April 23, 2025, Plaintiffs took the Rule 30(b)(6) deposition of Defendant's representative Todd Lavigne. (Doc. 38 at 8). In the deposition, Mr. Lavigne declared "that the 'fencerentalcompany.com' domain is owned by America's Fence Store [AFS] . . . and each of the other 'city landing pages' attached to the Complaint were created by America's Fence Store." (Doc. 39 at 3). On May 22, 2025, Plaintiffs served interrogatories and requests for admissions on Defendant. (Doc. 39 at 3). In its response, filed on June 30, 2025, Defendant reiterated Mr. Lavigne's deposition answer and asserted that "America's Fence Store [AFS] owns and controls the referenced web pages." (*Id.*). This testimony and evidence are inconsistent with the Defendant's admission in its Answer that it created and owned the pages. (*Compare* Doc. 39 at 3*, with* Doc. 16 at ¶¶35–36).

On September 23, 2025, Defendant filed its Motion for Leave to add AFS to their initial complaint. (Doc. 38). Then, on October 24, 2025, Plaintiffs filed their Motion for Partial Summary Judgment. (Doc. 41).

## DISCUSSION

### I. Motion for Leave to File Amended Complaint and to Amend Scheduling Order

#### A. Legal Standard

Plaintiffs seek leave of the Court to amend their Complaint to join AFS in this action. (Doc. 38). However, the Rule 16 Scheduling Order set the deadline for joining parties and amending pleadings for January 19, 2025. (Doc. 24 at 1). Therefore, to amend their pleadings and join AFS, Plaintiffs first need to seek leave to amend the Scheduling Order under Federal Rule of Civil Procedure 16(b)(4)'s good cause standard, and, if there is good cause, Plaintiffs need to seek leave to amend the Complaint under Rule 15(a)(2). *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

Once the deadline imposed by a scheduling order has lapsed, the party seeking leave to amend must demonstrate "good cause." *Id.*; Fed. R. Civ. P. 16(b)(4). Good cause exists

when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's note to the 1983 amendment). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.*

> [C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Id.* (internal citations omitted).

For instance, the good cause standard is typically not met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142–43 (9th Cir. 2007). Further, there is no set amount of time that a party must move for leave after learning of information that amounts to good cause. *Compare Equal Emp. Opportunity Comm'n v. Christian Care Mgmt. Inc.*, 2026 WL 1242970, at *4 (D. Ariz. May 6, 2026) (granting a motion for leave after a four month delay); *Sec'y of Lab., U.S. Dep't of Lab. v. Valley Wide Plastering Constr. Inc.*, 2022 WL 2390950, at *2 (D. Ariz. July 1, 2022) (holding that the moving party demonstrated diligence due to voluminous discovery even though there was an eighteen month delay); *and Equal Emp. Opportunity Comm'n v. Bay Club Fairbanks Ranch, LLC*, 475 F. Supp. 3d 1099, 1102–03 (S.D. Cal. 2020) (finding that a party was diligent despite a delay of eight months) *with Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023) (holding that a moving party was not diligent after both a five month delay and an eight month delay); *and Johnson*, 975 F.2d at 610 (finding that a the party was not diligent after moving for leave four months after the deadline for amending the pleadings).

But, once the movant establishes good cause, they must then meet Rule 15's standard for amending the pleadings. *Johnson*, 975 F.2d at 608. Rule 15 provides that leave to amend shall be freely given when "justice so requires." Fed. R. Civ. P. 15(a). "The court considers five factors in assessing the propriety of leave to amend—[1] bad faith, [2] undue delay, [3] prejudice to the opposing party, [4] futility of amendment, and [5] whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citing *Johnson*, 356 F.3d at 609). While leave to amend lies within "the sound discretion of the trial court," this Circuit has instructed that Rule 15's policy favoring amendment "should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987) (citation omitted). The party opposing amendment bears the burden of establishing prejudice or one of the other permissible reasons for denying a motion to amend. *Id.* at 187.

**B. Good Cause Standard**

Plaintiffs assert that they have good cause to amend the Scheduling Order to file an amended complaint joining AFS to the current litigation. (Doc. 38). Plaintiffs claim that Defendant is trying to disclaim liability for some of its actions by shifting blame to its related company, AFS. (*Id.* at 2). Plaintiffs assert, and Defendant does not deny, that Plaintiffs first learned that AFS, not Defendant, owned the various webpages during the deposition of Todd Lavigne on April 23, 2025. (*Id.* at 8; Doc. 39 at 6). After learning of this discrepancy in Mr. Lavigne's deposition, Plaintiffs submitted discovery requests to confirm the entity that owned the webpages, and they received responses to the requests on June 30, 2025. (Doc. 39 at 6–7). Plaintiffs then filed this Motion for Leave on September 23, 2025. (Doc. 38).

Plaintiffs argue that they have good cause to amend because they had no reason to believe that other parties would need to be added based on Defendant's Answer to ¶¶ 35–36, which stated that Defendant owned the webpages. (Doc. 38 at 10). Defendant contends that Plaintiffs had reason to seek leave of court based on Mr. Lavigne's deposition and should have moved for leave earlier. (Doc. 39 at 6–7). Plaintiffs dispute this contention,

arguing that it was Defendant's responses to the discovery requests that put Plaintiffs on notice for the need to amend, not Mr. Lavigne's deposition. (Doc. 38 at 9).

Plaintiffs were diligent in their conduct and have good cause to amend the Scheduling Order, regardless of whether the Court accepts the Plaintiffs' or Defendant's proposed date of discovery. First, after receiving the deposition testimony that conflicted with Defendant's admissions, Plaintiffs sought discovery to confirm or deny the claim in the Rule 30(b)(6) deposition, due to its conflict with Defendant's admissions in their Answer. (Doc. 38 at 10).

Although cases that Defendant cites in its briefing have held that delays anywhere from one month to eight months could constitute a finding of non-diligence, none of those cases confront the issue when discovery answers conflict with admissions in the non-moving party's answer. *See Kamal*, 88 F.4th at 1278; *Schwerdt v. Int'l Fid. Ins. Co.*, 28 F. App'x 715, 719 (9th Cir. 2002); *Johnson*, 975 F.2d at 608. Moreover, Defendant fails to address the fact that "[a] statement in a complaint, *answer* or pretrial order *is a judicial admission*, as is a failure in an answer to deny an allegation." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (emphasis added).

Here, Defendant admitted that it published the webpages in their Answer but then disclaimed ownership in their discovery responses, claiming that related entities owned the webpages. (*Compare* Doc. 39 at 3*, with* Doc. 16 at ¶¶35–36). Plaintiffs then sought leave to amend to add the related entity that ultimately does own the webpages. (Doc. 38). Both Plaintiffs and Defendant agree that Plaintiffs were not aware of the facts and theories supporting amendment until Mr. Lavigne's deposition and the discovery requests. These occurred after the deadline. (*See id.* at 10; Doc. 39 at 5–8). Thus, Plaintiffs could not have discovered these facts at the inception of the case, favoring Plaintiffs' request for leave. *Dang*, 488 F.3d at 1142–43. Just as "a scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,'" neither is Defendant's Answer. (Doc. 39 at 4) (quoting *Johnson*, 975 F.2d at 607–08). Because of Defendant's admission in its Answer, Plaintiffs' course of action in seeking further

discovery to establish ownership of the websites was not careless, and Plaintiffs were diligent in seeking leave to amend. Plaintiffs have good cause to amend the Scheduling Order in this case.

**C. Prejudice**

Defendant next asserts that even if Plaintiffs have good cause, Defendant would be prejudiced if the Court gives Plaintiffs leave to amend the Scheduling Order. (Doc. 39 at 8–9). Under Rule 16(b), prejudice "supplies an additional reason for denying" a motion to amend. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (*citing Johnson*, 975 F.2d at 609). In *Coleman*, the plaintiffs did not amend their complaint to add a disparate impact theory until years after receiving information that would have supported this theory. *Id.* at 1294–95.

Defendant argues that allowing Plaintiffs to add AFS to this suit would lead to increased costs due to the reopening of fact discovery. (Doc. 39 at 8–9). However, Defendant fails to demonstrate how the addition of a related entity would increase costs, cause delay, or change the litigation strategy. (*See id.*). Unlike in *Coleman*, Plaintiffs are not changing their claims or theory of the case after years of discovery; instead, they are merely seeking to add a related entity after discovering the true owners of the website. *Compare* 232 F.3d at 1294–95, *with* (Doc. 38). Further, any increase of costs would be due to Defendant's failure to amend their Answer, rather than due to Plaintiffs' actions. Defendant has not demonstrated prejudice.

**D. Leave to Amend**

Even though Plaintiffs have established good cause for amending the Scheduling Order under Rule 16, Plaintiffs must also meet the Rule 15(a)(2) standard for leave to amend. Rule 15 provides that leave to amend shall be freely given "when justice so requires," Fed. R. Civ. P. 15(a), which "should be applied with extreme liberality." *DCD Programs, Ltd.*, 833 F.2d at 185. As discussed above, any prejudice or undue delay suffered by Defendant is due to its failure to amend its Answer and is not due to Plaintiffs.

Plaintiffs have met the "good cause" standard under Rule 16(b)(4) for amending the Scheduling Order and the "when justice so requires" standard under Rule 15(a)(2) for amending the pleadings. Plaintiffs Motion for Leave to Amend is granted.

## II. Plaintiff's Motion for Partial Summary Judgment

### A. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the responsibility of presenting the basis for its motion and identifying the portions of the record which demonstrates the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. When considering motions for summary judgment, courts construe the facts in the light most favorable to the non-moving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a material, factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Specifically, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The disputed evidence must be "that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he threshold inquiry . . .[is] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**B. Analysis**

Plaintiffs seek Summary Judgment on three of Defendant's affirmative defenses: (1) that Defendant AFC has priority of use in many states, (2) that Plaintiffs' marks are weak and entitled to narrow or no protection because third parties have used similar marks for similar goods, and (3) that Plaintiffs' claims fail due to laches. (Doc. 41). Plaintiffs only seek partial summary judgment on these affirmative defenses and do not seek summary judgment on any of Plaintiffs' claims. (*Id.*).

**1. Priority of Use**

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark . . . the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219 (9th Cir. 1996) (citation omitted). As an affirmative defense, Defendant contends that Plaintiffs' claims fail because Defendant has priority of use for the trademarks at issue. (Doc. 16 at 9). Plaintiffs seek summary judgment on this affirmative defense, arguing that they used the registered "AMERICAN RENT-A-FENCE" mark and unregistered "American Fence" and "American Fence Company" marks in the relevant states prior to Defendant and that Defendant has failed to produce evidence that demonstrates its priority of use. (Doc. 41 at 2–14).

"The basic principle underlying federal and state trademark law is that distinctive marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods from those of others and that the [o]ne who first uses a distinct mark in commerce thereby acquires rights to that mark." *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1236 (9th Cir. 2022) (quotations and internal citations omitted). "Accordingly, the general rule remains that '[a]ll common law and registration rights' rest on the use-based rule of 'first-in-time, first-in-right.'" *Id.* (*quoting* 2 McCarthy on Trademarks and Unfair Competition § 16:1 (5th ed. 2022 Update)). For non-inherently distinctive trademarks, as are the marks in this case,[2] "ownership generally goes to the first entity to acquire

[2] Both parties have submitted briefing on secondary meaning, *see* Doc. 41 at 4–10; Doc.

secondary meaning." 2 McCarthy on Trademarks and Unfair Competition § 16:1 (5th ed. 2026 Update). Thus, the party asserting priority of use must prove that secondary meaning existed before the other party first began to use the mark. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985).

Here, Plaintiffs have demonstrated, and Defendant has admitted, that Defendant did not use any of the marks at issue within the relevant states prior to June 2023. (Doc. 46-1 at 3). Plaintiffs have also demonstrated that they have been using the marks in the relevant states prior to this date. (Doc. 41 at 6–10). Thus, Plaintiffs have shown that Defendant did not establish secondary meaning before Plaintiffs began using the marks in the relevant states, because Defendant failed to use the mark in the relevant locations prior to Plaintiffs' use. As a matter of law, Defendant does not have priority of use of these marks.

Defendant instead contests that its priority of use defense should survive because there is no likelihood of confusion between the marks. (Doc. 46 at 3). This argument misconstrues what Plaintiffs request in their Motion for Partial Summary Judgment. (Doc. 41). Plaintiffs are seeking summary judgment as to Defendant's affirmative defense, which claims that Defendant has priority of use, not to establish Plaintiffs' priority of use.[3] (Doc. 41 at 2–3).

Plaintiffs are entitled to partial summary judgment on Defendant's affirmative defense concerning the lack of Defendant's priority of use.

**2. Third-Party Use**

Next, Defendant raises the affirmative defense that "third parties have used similar marks for similar goods, such that Plaintiffs' alleged marks are weak and entitled to narrow or no protection." (Doc. 16 at 9). Plaintiffs seek summary judgment on this defense, arguing that "Plaintiffs' use of 'American Fence Company' and 'American Fence' to

46 at 3–4, appearing to agree that the marks at issue are not distinctive unless those marks have acquired secondary meaning. *See generally Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

[3] Therefore, this conclusion does not establish that Plaintiffs' marks have acquired the necessary secondary meaning for priority of use; it simply means that Defendant has failed to show their own priority of use.

promote fencing-related goods and services . . . has been substantially exclusive relative to other fencing suppliers." (Doc. 41 at 14). Defendant's affirmative defense misunderstands how exclusivity of a mark is relevant to a trademark claim. Exclusivity of a mark is one consideration in evaluating secondary meaning of a mark, which establishes whether a descriptive mark is protectable. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005). Whereas, the strength of a trademark is one of the *Sleekcraft* factors, which is used to determine likelihood of confusion and infringement upon a trademark. *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080–81 (9th Cir. 2005). Exclusivity of use and strength of a trademark are factors in distinct tests.

Exclusivity is a factor in determining whether a mark acquired secondary meaning, whereas strength is a factor in determining likelihood of confusion between two marks. *Compare id.*, *with Yellow Cab Co. of Sacramento*, 419 F.3d at 930. Essentially, in its affirmative defense, Defendant is incorrectly pleading an element of the secondary meaning analysis, arguing that it fulfills an element of the likelihood of confusion analysis. Further, secondary meaning, likelihood of confusion, and the strength of a trademark are predominantly factual questions, which should be left to a jury. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) ("The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the *Sleekcraft* likelihood of confusion test."); *Levi Strauss & Co.*, 778 F.2d at 1355 ("[T]he question of secondary meaning is one of fact").

In their initial Motion for Partial Summary Judgment, Plaintiffs only contested Defendant's ability to show third-party use. (Doc. 41 at 14). Defendant then provided examples of third-party use in its Response. (Doc. 46 at 4–5). In their Reply, Plaintiffs then asked for summary judgment on this affirmative defense on the basis that their trademark is strong, rather than on a lack of third-party use. (Doc. 48 at 4–5). "[I]ssues cannot be raised for the first time in a reply brief." *Coleman*, 232 F.3d at 1289 n. 4 (citation omitted). Therefore, the Court declines to consider the argument concerning the marks' strength in Plaintiffs' Reply brief. Because the relevant issue in Plaintiffs' initial motions

is whether there is third-party use of the marks, the Court will analyze the third-party use affirmative defense as part of the secondary meaning analysis.

Regarding the lack of exclusive use, Defendant provides a list of other companies that use similar marks in fencing businesses across the relevant states. (Doc. 46 at 5; Doc. 47-1). Plaintiffs challenge this list by arguing that the examples that Defendant provides are irrelevant or incorrectly represented, but for some of these challenges, Plaintiffs simply argue that "the business name is not confusingly similar to Plaintiffs' mark." (Doc. 48 at 7). This factual argument demonstrates that Defendant has raised a genuine dispute of material fact as to third-party usage of the marks. A reasonable jury could find that Plaintiffs' lack of exclusive use of the marks, as demonstrated by Defendant's list provided in Doc. 47-1, could demonstrate a lack of secondary meaning for Plaintiffs. Further, because secondary meaning is a predominantly factual question, it should be left to the factfinder. *Levi Strauss & Co.*, 778 F.2d at 1355.

Plaintiffs' motion for partial summary judgment on Defendant's third-party use affirmative defense is denied.

**3. Laches**

Defendant's Answer asserts the affirmative, equitable defense of laches. Laches is "an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (citation omitted). Plaintiffs seek summary judgment on this affirmative defense, claiming the defense fails as a matter of law. (Doc. 41 at 14–16). To prevail on a claim for laches, Defendant must show that Plaintiffs unreasonably delayed initiating this action and that Defendant was prejudiced as a result. *Jarrow Formulas, Inc.*, 304 F.3d at 838. Whether a party was unreasonably delayed in bringing a claim is a two-step analysis. *Id.* "First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action. Second, we decide whether the plaintiff's delay was reasonable." *Id.* (citations omitted).

The parties dispute when Plaintiffs learned of their potential claims. Plaintiffs argue that they first learned of their claims on May 23, 2024, and then brought this suit on July 17, 2024. (Doc. 41 at 15). On the other hand, Defendant argues that, because the Plaintiffs have engaged in litigation with Defendant—including lawsuits in the District of Kansas in 2010 and 2020 that reached a Stipulated Consent Judgment Order—that, "Plaintiffs knew or should have known that growth of both Plaintiffs and Defendant would lead to overlap in some states." (Doc. 46 at 7).

Even if Plaintiffs anticipated that growth would lead to overlap in Defendant's and Plaintiffs' markets, Defendant failed to show that Plaintiffs had any knowledge of its potential claim in this suit prior to May 23, 2024. (*See* Doc. 46). Plaintiffs have shown that the first indication that Defendant entered the markets in any of the nine states at issue was on May 23, 2024. (Doc. 41 at 15). Defendant's CEO, Todd Lavigne, also admitted that Defendant has no information showing that Plaintiffs became aware of any trademark claims before June 4, 2024, and Defendant has provided no additional information supporting such a claim. (Doc. 41 at 15; *see* Doc. 46). Mr. Lavigne also admitted that he was not aware that Defendant or any of its related companies "were using 'American Fence' or 'American Rental Fence' in any of the nine states until [they] received the Complaint." (Doc 41-6 at 17). Because Plaintiffs have met their burden in showing that they did not have notice of their claim until May 23, 2024, and Defendant has failed to produce any facts to contest this assertion, the relevant date for the laches inquiry is May 23, 2024. Therefore, the length of delay for the purposes of laches would be around two months between the learning of the potential claim and the filing of the Complaint.

To determine whether a delay was reasonable, "we assess the plaintiff's delay by looking to whether the most analogous state statute of limitations has expired. If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches." *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018) (citation omitted). The analogous statutes of limitations for trademark infringement claims in Arizona are between one to three years. *See Ranch*

*Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 989 (D. Ariz. 2007). Therefore, no matter which analogous statute of limitations applies, there is no presumption of laches in this case. Because Plaintiffs filed the Complaint less than two months after Plaintiffs learned of potential trademark infringement, the delay was minimal and reasonable.

Defendant is unable to show any material facts such "that a reasonable jury could return a verdict for them," on the lack of unreasonableness of Plaintiffs' delay in bringing suit. *Anderson*, 477 U.S. at 248. Plaintiffs are entitled to summary judgment on Defendant's laches defense.

**CONCLUSION**

Plaintiffs' Motion for Leave to File First Amended Complaint and to Amend Scheduling Order is granted because Plaintiffs have good cause to amend the scheduling order based on Defendant's conflicting Answer and discovery responses. Plaintiffs' Motion for Summary Judgment is granted in part and denied in part. For Defendant's priority of use affirmative defense, Plaintiffs' motion for summary judgment is granted because Defendant is unable to show acquisition of secondary meaning prior to Plaintiffs' use of the marks in the relevant states. For Defendant's laches affirmative defense, Plaintiffs' Motion for Summary Judgment is granted because there is a lack of unreasonable delay. For Defendant's third party use affirmative defense, Plaintiffs' Motion for Summary Judgment is denied as there is a genuine dispute of material fact regarding the exclusivity of Plaintiffs' use of the marks at issue.

**IT IS ORDERED** that Plaintiffs' Motion for Leave to File First Amended Complaint and to Amend Scheduling Order (Doc. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs file their First Amended Complaint as set forth in Exhibit 1 to its Motion (Doc. 38-1) within seven (7) days of the filing of this order.

**IT IS FURTHER ORDERED** that Plaintiffs serve the Summons and the First Amended Complaint upon Defendant America's Fence Store Incorporated within fourteen (14) days of the filing of the First Amended Complaint.

**IT IS FURTHER ORDERED** that the Case Management Order (Doc. 24), as modified by Doc. 35, is hereby suspended.

**IT IS FURTHER ORDERED** that the Court will set a Rule 16 Case Management Conference after Defendant America's Fence Store Incorporated files its response to the First Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 41) is **GRANTED in part** and **DENIED in part.**

Dated this 30th day of September, 2026.

G. Murray Snow
Senior United States District Judge